## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ALEXANDER HYMES**                                    **CIVIL ACTION**

**VERSUS**                                             **NO. 07-0502**

**BURL CAIN, WARDEN**                                  **SECTION "R"(5)**

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. §2254(e)(2). Accordingly, it is recommended that the petition be **DENIED WITH PREJUDICE.**

## I.  PROCEDURAL HISTORY

Petitioner, Alexander Hymes, is a state prisoner currently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana.  On August 30, 2000, the Jefferson Parish District Attorney filed a nine-count bill of information charging Hymes with attempted first degree robbery in counts one and two and with first

degree robbery in counts three through nine.  Hymes was tried by a twelve-person jury on May 22-24, 2001.  The jury found Hymes guilty of attempted simple robbery on count one, guilty of simple robbery on count seven and guilty as charged on all remaining counts.

On May 31, 2001, the trial judge sentenced Hymes to three years at hard labor on count one, ten years at hard labor on count two, twenty years at hard labor on counts three through six and counts eight and nine, and five years on count seven.  The judge ordered that the sentences run consecutively to each other, for a total term of imprisonment of 138 years.

Hymes filed an appeal, seeking a review of his sentences for excessiveness and a review for errors patent on the face of the record.  Upon finding that the district court had failed to rule on Hymes' Motion to Reconsider Sentence, the appellate court, on December 30, 2002, issued an opinion dismissing Hymes' appeal and remanding the matter to the district court, ordering that the trial court rule of Hymes' Motion to Reconsider "within 30 days of this appellate opinion."  The Fifth Circuit further ordered Hymes "to re-lodge his appeal within 60 days of the date of the ruling on the Motion to Reconsider or the date of its opinion, whichever is later."  State v. Hymes, 836 So.2d 648, No. 2002-KA-836 (La. App. 5 Cir. Dec. 30, 2002).

On January 27, 2003, the district court heard arguments on Hymes' Motion to Reconsider Sentence.  On that same date, the court

issued its ruling, denying Hymes' Motion to Reconsider.[1] Accordingly, Hymes had 60 days from January 27, 2003, until March 28, 2003, to timely re-lodge his direct appeal with the Louisiana Fifth Circuit Court of Appeal. Hymes, however, waited over a year from that date, until April 19, 2004, to re-lodge his direct appeal.[2]

Despite its lateness, the Louisiana Fifth Circuit Court of Appeal, on October 12, 2004, issued an opinion addressing the merits of Hymes' appeal, finding that Hymes' sentences were not excessive, that the evidence was insufficient to sustain Hymes' conviction with respect to count one, and that the trial court's commitment did not properly reflect the jury's verdicts on counts one and seven.[3] Consequently, the appellate court reversed Hymes' conviction and sentence on count one, affirmed his convictions and

[1]A copy of the district court's minutes of January 27, 2003, reflecting the court's disposition and noting that Hymes could "re-lodge his appeal within 60 days from this date", is contained in the State rec., vol. 5 of 6, p. 2.

[2]A copy of Hymes' April 19, 2004 appeal brief, filed on his behalf by the Louisiana Appellate Project, is contained in the State rec., vol. 5 of 6.

[3]The state appellate court further found that the trial court erred in failing to specify that Hymes' sentences on counts two, three, four, five, six, eight, and nine were to be served without benefit of parole, probation, or suspension of sentence. However, the court determined that no action was necessary to correct this error because the sentences, under the provisions of LSA-R.S. 15:301.1, were automatically deemed to contain the restriction that they were to be served without benefit of parole, probation, or suspension of sentence.

sentences on the remaining counts, and remanded the matter so that the trial court could correct Hymes' commitment in accordance with the appellate court's findings. State v. Hymes, 886 So.2d 1157, No. 2004-KA-320 (La. App. 5 Cir. Oct. 12, 2004). On April 1, 2005, the Louisiana Supreme Court, in a one-word opinion, denied Hymes' writ application. State v. Hymes, 897 So.2d 599 (La. 2005). Hymes did not file a petition for a writ of certiorari to the United States Supreme Court.

Following the conclusion of his direct appeal proceedings, Hymes sought post conviction relief. Hymes effort in this regard culminated on December 8, 2006, when the Louisiana Supreme Court denied his writ application. State ex rel. Hymes v. State, 943 So.2d 1065 (La. 2006).

In the instant federal habeas corpus action, Hymes raises the following claims: 1) Jury charge regarding reasonable doubt was constitutionally defective; 2) Counsel was unconstitutionally ineffective due to failure to object to erroneous reasonable doubt jury instruction; 3) Counsel was unconstitutionally ineffective due to failure to object to trial court's failure to advise jurors that no inference could be drawn from the fact that Hymes did not testify; 4) Illegal search and seizure was performed; and, 5) His constitutional right to Miranda warnings was violated. In its Response (rec. doc. 10, p. 4), the State concedes that Hymes has exhausted his state court remedies as required under Rose v. Lundy,

455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982). Similarly, the State does not contest the timeliness of the instant action; however, timeliness is an issue which may be raised by the Court *sua sponte*. *Kiser v. Johnson*, 163 F.3d 326, 328-29 (5th Cir. 1999).

## II. TIMELINESS

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),[4] a petitioner has one year within which to bring his habeas corpus claims pursuant to 28 U.S.C. §2254. This one-year period generally commences to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §2244(d)(1)(A) (West 2009).

In the instant matter, petitioner's time for seeking direct review arguably expired on March 28, 2003, when his 60-day period for re-lodging his direct appeal expired. See Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008)(if the defendant stops the state direct appeal process before he receives an adjudication from the state's highest court, his conviction becomes final when the time for seeking direct review expires). As such, Hymes' one-year statute of limitations arguably commenced running on that date. Id. at 317-318. However, an important distinction between the

---

[4]The AEDPA applies to this case as it was filed after the enactment of the AEDPA, or after April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2060, 138 L.Ed.2d 481 (1997).

instant action and the situation at issue in <u>Butler</u>, is that the state appellate court adjudicated the merits of Hymes' late application for direct review. In <u>Butler</u>, 533 F.3d at 318-320, the United States Fifth Circuit concluded that the Louisiana Supreme Court, by virtue of its one-word order denying Butler's late direct review application, had not issued a ruling on the merits. Therefore, the <u>Butler</u> court concluded that the Louisiana Supreme Court's decision "does not bring into question the conclusion that the one-year period for Butler to bring a federal habeas petition began on July 24, 1998 [when his time for timely filing a direct review application with the state high court expired]." <u>Id</u>. at 319-320.

Because the Louisiana Fifth Circuit Court of Appeal did consider the merits of Hymes' late direct review application, a conclusion that Hymes' one-year statute of limitations began to run on March 28, 2003, when his time expired for timely seeking relief from the state appellate court, is "in question". <u>See</u> <u>Carey v. Saffold</u>, 536 U.S. 214, 225-225, 122 S.Ct. 2134, 2141, 153 L.Ed.2d 260 (2002) ("We cannot say ... that the Ninth Circuit was wrong in its ultimate conclusion" that the petitioner's late state habeas application was "nonetheless timely", for purposes of delaying the running of the one-year statute of limitations, in a situation where the state court rendered a decision on the merits in connection with petitioner's late state habeas application).

Accordingly, the Court shall proceed to address the merits of Hymes' claims following its review of the applicable facts.[5]

Nicole Courouleau testified that, on July 15, 2000, she was employed at Tru-Value Hardware at 6409 Airline in Metairie. Defendant, Alexander Hymes, entered the store and asked her to direct him to the plumbing tubing. Courouleau showed him where the plumbing merchandise was, and then she went to the store's cash register to ring up defendant's purchase. Defendant put his hand under his shirt and told her he had a gun. He ordered her to open the cash register or he would shoot her. Courouleau testified that she gave defendant money from the register because she believed he had a weapon, and she feared for her life. When defendant left the store, she called police. Courouleau testified that she identified defendant in a photographic lineup as the man who robbed her. She also identified defendant in court.

Lisa Polizzi testified that, on July 22, 2000, she was working at Adele's Shoppers Mart at 6601 Veterans Boulevard in Metairie. Her grandmother, the store's owner, was also working there that day. Defendant entered the store and showed interest in a particular item. Polizzi took the item off the rack and told him the price. Defendant then said, "This is a

---

[5]The facts are taken from the Louisiana Fifth Circuit Court of Appeal's opinion, <u>State v. Hymes</u>, 886 So.2d 1157, 1159-1162 (La. App. 5 Cir. 2004).

robbery.  Give me what's in the register and I won't hurt you."  Defendant held his hand inside the waistband of his pants.  Polizzi testified she believed he had a weapon.  She gave him $150 from the cash register.  Defendant left the store, and Polizzi and her grandmother notified police.  Polizzi identified defendant as the robber in a photographic lineup, and later identified him in court.

On July 24, 2000, Lola Julien was working as a cashier at Piccadilly Cafeteria on Veterans Boulevard in Metairie.  She saw defendant eating in the restaurant's dining area.  Defendant later approached her as if he intended to pay for his meal.  He told Julien, "I don't want you to scream.  I don't want you to ring any bells.  I need your money."  Julien testified that defendant did not say he had a gun, but she thought he had one, because he held his hand at his waist, and his shirt was loose-fitting.  Julien gave defendant between $140 and $260 from the cash register. Defendant then left the restaurant.

Julien told a customer that she had been robbed.  The man followed defendant out the door of the restaurant and watched him go to his truck.  The customer called police on his cellular telephone and described the truck.  Julien identified defendant in a photographic lineup, and at trial as the man who robbed her.

Rainna Lagnes was employed at C.C.'s Coffee House on Veterans Boulevard in Metairie on the night of July 25, 2000. Defendant entered and ordered a drink. She prepared his order. Defendant then told her he had a gun, and he wanted all the money in the cash register. Lagnes testified that she believed defendant had a gun, because he put his hand under his shirt. Defendant also told her he would shoot her if she screamed. Lagnes gave defendant $900 from the cash register. Defendant then left the coffee shop. Lagnes identified defendant in a photographic lineup. She also identified him at trial.

Masooda Khan operates Fashion Arcade, a clothing store on Veterans Boulevard in Metairie. She testified that she was working there on August 1, 2000, when defendant entered and told her he wanted to buy a sweater for his girlfriend. Khan told defendant she did not have any sweaters in stock, as it was summertime. Defendant told her, "I have a gun, lady. Open your cash register. Give me all the money." Khan testified that defendant's hands were in his pockets. She did not see a gun, but she could see the shape of an object pointing toward her. Khan did not give defendant any money. She told him to leave, and he ran out of the store. Khan called police four days later to report the incident. She identified defendant in a photographic lineup, and in court.

Sherry Luquette testified that, on August 1, 2000, she was working as the manager of Russell Stover Candies on Veterans Boulevard in Metairie.  A man entered the store, picked up a bag of candy, and placed it on the counter as if to make a purchase. Luquette rang up the purchase on the cash register and gave the man the total price.  He reached into his pants and said, "I have a gun, give me the money." Luquette reached into the cash drawer, and the man told her, "Just don't cause any trouble."  He then said, "Hand it to me."  Luquette gave him about $200, and he left the store.

Luquette told her co-worker she had been robbed, and asked her to call police.  She then went next door to Red Wing Shoes and told Billy Hingle, a customer there, that she had been robbed.  Hingle testified that Luquette pointed out the robber, who was by then walking away through the parking lot. Hingle watched the man get into a mauve or purplish pickup truck with a "V" in the license number.  Hingle testified that the truck pictured in State's Exhibits 4 and 5 was the one he saw.  He noted that the truck in the photographs had a license plate with a "V" on it.  Hingle was not able to identify the robber, as he did not get a good look at the man's face.

Donna Rasch owns and operates a Hallmark greeting card shop on South Clearview Parkway in Harahan.  On August 2,

2000, defendant entered her store, selected a card, and threw it on the checkout counter.  She rang up the card and told him the charge was fifty-four cents.  Defendant told her, "Open the register and give me what you have in there." Rasch testified that defendant seemed to be holding something in his hand, although she could not see what it was.  She believed defendant had a weapon.

Rasch told defendant she could not get the cash register to open.  Defendant said, "Give me what was in the register. Don't make me do something we'll both be sorry for." Defendant continued to threaten Rasch and demand that she open the cash register.  Rasch did not ultimately give defendant any money.  He took the greeting card and left the store. Rasch testified that she saw defendant get into a maroon-ish purple pickup truck.

Rasch reported the incident to police.  While officers were interviewing her at the Hallmark store, they received word that a man meeting the robber's description had been apprehended.  The officers transported her to a Burger King restaurant on Veterans Boulevard in Metairie, where she identified defendant as the robber.  She also identified defendant in court.

Marta Gato owns and operates Golden Touch Florist on

Veterans Boulevard in Metairie. Gato was working with an employee, Jennifer Fahrenholtz, on August 2, 2000, when defendant entered the shop. Fahrenholtz testified that she asked defendant whether he needed assistance. He asked her where the cash register was, and she told him it was in the back of the store. Defendant grabbed her arm and walked her toward the back of the shop. Fahrenholtz testified that defendant implied he had a gun by placing his hand in his pants.

Gato testified that she saw defendant take Fahrenholtz's arm. She noted that defendant's hand was in his pants. She asked him whether he needed to find the bathroom. Defendant said, "No, I want your money. I have a gun." Gato told defendant she did not have much cash. He replied, "That's fine. Give me what you have." She gave defendant fifty or sixty dollars. Gato testified that defendant told her not to try to go after him. He then left the store. She saw him leave in a purple truck. She identified State's Exhibits 4 and 5 as photographs of defendant's truck.

Gato testified that a police officer arrived at the store one-half hour after the robbery. He drove Gato to a nearby Burger King parking lot. She saw defendant there, inside a police car. She identified him as the robber. She also saw defendant's truck at Burger King. Fahrenholtz testified that

she identified defendant in a photographic lineup.  Gato and Fahrenholtz both identified him at trial as the robber.

Deputy Louis Berard of the Jefferson Parish Sheriff's Office testified that he heard a robbery call broadcast over police radio. He saw defendant driving on Veterans, and both defendant and his truck met the broadcast descriptions. Berard followed the truck, and turned on his overhead lights. Defendant pulled into a Burger King parking lot in the 3900 block of Veterans.  The officer followed.  Berard ordered defendant to get out of his truck, and defendant complied. Berard testified that he held defendant until a robbery detective arrived.

Berard did not question defendant.  He testified that defendant spontaneously stated, "You can't charge me with armed robbery 'cause I didn't have no gun.  All you can charge me with is second degree robbery."

Detective William Jones of the robbery division testified that he was present when Sergeant Picone, his supervisor, presented defendant with a consent to search form.  Defendant completed the form, consenting to a search of his truck. Detective Danny O'Neil searched the truck and recovered a Hallmark store bag and greeting card from the vehicle's front seat.

Detective John Carroll testified that he was at the scene of defendant's arrest.  He later advised defendant of his <u>Miranda</u> rights at the investigations bureau.  Carroll conducted three tape-recorded interviews with defendant.  The detective testified that defendant lied to him in the first two interviews.  In the third interview, defendant admitted to the offenses at Tru-Value Hardware (count three), Adele's (count four), Piccadilly (count five), C.C.' s Coffee House (count six), Tiffin Inn (count one), Russell Stover Candies (count nine), Hallmark, Golden Touch Florist (count eight), and Hallmark (count seven).  That tape recording was entered in evidence, and was played for the jury.  A transcript of the statement was also entered in evidence.


**III.  STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. §2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in state court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. §2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).  The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); Hill, 210 F.3d at 485.  Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it `was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill, 210 F.3d at 485 (quoting 28 U.S.C.§2254(d)(2)).

## IV.  MERITS

### A. Constitutionally Defective Reasonable Doubt Jury Charge

Hymes alleges that the trial court's action, in allegedly failing to instruct the jury, pursuant to La.C.Cr.P. art. 804A(2), that reasonable doubt of guilt could arise out of the lack of evidence, was violative of his constitutional rights and rights under state law.

The state district court, in addressing the instant claim in connection with Hymes' post-conviction application, noted that the basis of his challenge to the court's jury instructions was known to Hymes in the proceedings leading to his conviction.[6]  As such, the court found that Hymes' claim was procedurally barred under the provisions of La.C.Cr.P. art. 930.4(B).[7]  Based upon this finding, the State argues that Hymes has procedurally defaulted on the instant claim and is therefore prohibited from seeking federal habeas corpus relief.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent

---

[6]A copy of the district court's Order is contained in the State rec., vol. 2 of 6, tab 6.

[7]Article 930.4(B) provides:  "If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief."

of the federal claim and adequate to support that judgment. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir.1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir.1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. Harris, 489 U.S. at 263; Glover, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion. Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the

state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. <u>Amos</u>, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. <u>Glover</u>, 128 F.3d at 902. A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. <u>Id</u>.

In the instant matter, the state district court issued the last reasoned opinion. The state district court, pursuant to La.C.Cr.P. art. 930.4(B), denied Hymes' challenge to the trial court's reasonable doubt jury instruction due to the fact that despite his knowledge of the claim, he failed to raise it in proceedings leading to his conviction. Article 930.4(B) has been recognized as an independent and adequate state procedural ground. <u>See</u> <u>Simmons v. Cain</u>, 2008 WL 2185422, *4-6 (E.D. La. May 20, 2008) (Berrigan, J.).[8] When

---

[8]In his Traverse (rec. doc. 12), Hymes argues that his challenge to the trial court's reasonable doubt jury charge is not procedurally bar and cites <u>Bennett v. Whitley</u>, 41 F.3d 1581 (5th Cir. 1994), in support of his argument. However, <u>Bennett</u>, involved a situation where the state court had denied the pertinent claims based upon La.C.Cr.P. art. 930.4(A) which provides that "[u]nless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered." It

the state court relies on this procedural default in dismissing the claim, as it did here, the claim is immune from federal review. <u>Id</u>.

A federal habeas petitioner, however, may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." <u>Glover</u>, 128 F.3d at 902 (citing <u>Coleman</u>, 501 U.S. at 731-32); <u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). The mere fact that petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. <u>Id</u>. at 486.

In this case, Hymes has not offered any cause for the

is only La.C.Cr.P. art. 930.4(A), not La.C.Cr.P. art. 930.4(B), which the <u>Bennett</u> court declared did not act as a procedural bar for purposes of precluding federal habeas corpus review.

default which would excuse the procedural bar imposed by the Louisiana courts. Further, this court's review of the record does not support a finding that any factor external to the defense prevented Hymes from raising the instant claim in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented Hymes from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hoque v. Johnson, 131 F.3d 466, 497 (5th Cir.1997) (citing Engle, 456 U.S. at 134 n. 43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and Hymes has not alleged any actual prejudice. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir.1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir.1977)).

The instant claim is therefore procedurally barred from review by this federal habeas corpus court absent a showing that a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. Hoque, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, Hymes must

provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902. To satisfy the factual innocence standard, Hymes must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to his guilt. Campos v. Johnson, 958 F.Supp. 1180, 1195 (W.D. Tx.1997) (footnote omitted); Nobles v. Johnson, 127 F.3d 409, 423 n. 33 (5th Cir. 1997), cert. denied, 523 U.S. 1139 (1998) (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F .3d at 903.

Hymes does not present and the record does not contain evidence that suggests his actual innocence. Accordingly, Hymes has failed to overcome the procedural bar to the instant claim. As such, the claim is procedurally barred and must be dismissed with prejudice for that reason.

Alternatively, the instant claim is subject to dismissal because it is without merit. The district court, after determining that Hymes' claim was barred pursuant to La.C.Cr.P. art. 930.4, noted "that the trial court provided the jurors with the appropriate jury instructions regarding "reasonable doubt." A review of the record reflects that the district court's assessment in this regard is correct.

La.C.Cr.P. art. 804A(2) provides that "[i]t is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case". Hymes contends that the trial court erred in that he failed to advise jurors, in accordance with Article 804A(2), that reasonable doubt could arise "out of the lack of evidence in the case." However, in support of his position, Hymes points to the preliminary instructions provided by the court to jurors shortly after they were chosen to serve as jurors.[9] The record reflects that the trial court, in the actual charges provided to jurors after all the evidence had been submitted, did, in fact, provide instructions in accordance with Article 804A(2). Specifically, the court instructed: "In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence **or out of the lack of evidence** [emphasis

---

[9]See Hymes' exhibit A1; see also State rec., vol. 4 of 6, p. 270.

22

added]."[10]

### B. Ineffective Assistance of Counsel Due to Failure to Object to Constitutionally Defective Reasonable Doubt Jury Charge

The seminal Supreme Court decision regarding ineffective assistance of counsel is <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984), wherein the Court held that in order to prove that counsel was ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the <u>Strickland</u> test, "it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (citing <u>Strickland</u>, 466 U.S. at 690). To prove prejudice under the <u>Strickland</u> standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S.

---

[10]<u>See</u> State rec., vol. 3 of 6, pp. 40-41.

at 694.

Hymes claims that trial counsel was ineffective due to his failure to object, "during the May 24, 2001, preliminary jury instruction", when "the trial judge committed reversible error in failing to instruct the jury, as required by La.C.Cr.P. art. 804A(2), that a reasonable doubt as to petitioner's guilt could arise out of the lack of evidence."[11]  However, Hymes clearly was not prejudiced by counsel's alleged deficiency in this regard since, as noted above, the court, after all the evidence had been submitted, did, in fact, instruct the jury, in accordance with La.C.Cr.P. art. 804A(2), that reasonable doubt could arise out of a lack of evidence.

### C. Ineffective Assistance of Counsel Due to Failure to Object to Trial Court's Failure to Read No Inference Jury Charge

Hymes contends that his counsel was unconstitutionally ineffective when he failed to make a written request for, or object to the trial court's failure to give, a jury instruction advising jurors that a defendant has a right not to testify on his own behalf and that no inference can be drawn from a defendant's failure to testify.  For the following reasons, Hymes' claim in this regard is without merit.

The United States Supreme Court has established that upon

---

[11]See Federal rec., doc. 1, Hymes' supporting memorandum at p. 7.

proper request, the Fifth Amendment requires that a trial judge instruct the jury that no adverse inference can be drawn from a defendant's failure to testify. See Carter v. Kentucky, 450 U.S. 288, 300 (1981). However, a constitutional violation stemming from a trial court's error in not giving a "failure to testify" instruction, is subject to a harmless error analysis. See Richardson v. Lucas, 741 F.2d 753, 755 (5th Cir. 1984). "For a constitutional error to harmless, 'the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt.'" Id. (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). "For the error to be harmless beyond a reasonable doubt, a court must 'decide whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt.'" Id. (quoting Harryman v. Estelle, 616 F.2d 870, 876 (5th Cir.) (en banc), cert. denied, 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980)).

In the instant matter, Hymes, making no attempt to hide his identity, robbed, over a period of approximately two weeks, eight retail establishments. Seven of the eight robbery victims positively identified Hymes as the man who had robbed them. Further, Hymes, pursuant to police interrogation, admitted to committing seven of these

25

robberies.  See Hymes, 886 So.2d at 1159-1162.

The above-described evidence is sufficient to support Hymes' convictions and is so overwhelming as to establish guilt beyond a reasonable doubt.  The court concludes that there is no reasonable possibility that the giving of a "failure to testify" instruction would have affected the verdict of guilty for Hymes.  Therefore, the court's error in failing to give the instruction was harmless and, correspondingly, counsel's failure to request the charge and/or to object to the court's refusal to provide the charge did not prejudice Hymes.  Accordingly, Hymes' claim of ineffective assistance of counsel is without merit.

### D. Illegal Search and Seizure

Hymes argues that his constitutional rights were violated when the arresting officers searched his vehicle and obtained evidence  without his consent or a valid search warrant. This court, however, need not address the merits of the above argument due to the mandate enunciated in Stone v. Powell, 428 U.S. 465 (1976).  In Stone, the United States Supreme Court concluded:

> [W]here the State has provided an
> opportunity for full and fair litigation of
> a Fourth Amendment claim, the Constitution
> does not require that a state prisoner be
> granted federal habeas corpus relief on the

> ground that evidence obtained in an
> unconstitutional search or seizure was
> introduced at his trial.

Id. at 481-482 (footnote omitted).

In interpreting Stone, the Fifth Circuit has opined that an "opportunity for full and fair litigation" means just that: "an opportunity." Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002), cert. denied, 537 U.S. 1196, 123 S.Ct. 1264, 154 L.Ed.2d 1034 (2003)(citing Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978)). Even if a defendant fails to take advantage of his opportunity to litigate his motion to suppress, the fact that the opportunity was there suffices for the Stone bar to apply. Janecka, 301 F.3d at 320. Furthermore, the Fifth Circuit has held that the Stone bar applies despite an error by the state court in deciding the merits of a Fourth Amendment claim. Swicegood v. Alabama, 577 F.2d 1322, 1324-1325 (5th Cir. 1978).

In the present matter, Hymes does not contend that he was deprived of the opportunity to litigate his Fourth Amendment claim fully and fairly in the state court system. Rather, his argument addresses his dissatisfaction with the ultimate adverse ruling, with Hymes claiming that the state courts' failed to consider a newspaper photograph, attached to Hymes'

habeas petition as exhibit C, which, according to Hymes, reflects that he did not consent to the search of his vehicle.

Clearly, the record reflects that a motion to suppress was filed and an evidentiary hearing was held on the matter on December 11, 2000.[12] Further, the suppression issue was reurged, and once again rejected, shortly before trial commenced.[13] Hymes failed to raise the issue on appeal, waiting until his post-conviction application to once again argue that the search of his vehicle was illegal. In connection with his post-conviction application, the state district court, on January 31, 2006, denied Hymes' claim pursuant to La.C.Cr.P. art. 930.4 due to his failure to raise said claim "in an earlier proceeding and/or on appeal."[14] The Louisiana Fifth Circuit, finding "no error in the trial court's ruling of January 31, 2006," likewise denied Hymes'

---

[12]A transcript of the hearing on the motion to suppress is contained in the State rec., vol. 3 of 7, pp. 70-147.

[13]See State rec., vol. 4 of 7, pp. 418-421.

[14]See State rec., vol. 2 of 6, tab 6. As discussed earlier, see supra at pp. 12-14, the procedural bar, set forth under La.C.Cr.P. art. 930.4, due to a petitioner's failure to raise a claim in an earlier proceeding, has been deemed to be an independent and adequate bar for purposes of precluding federal habeas corpus review.

illegal search claim.[15] Lastly, the Louisiana Supreme Court rejected Hymes' argument by denying his writ application. Hymes, 943 So.2d 1065.

In short, Hymes' Fourth Amendment claim is not properly before the court because the requirements set forth in Stone have been met through state court proceedings. Alternatively, Hymes' Fourth Amendment claim is procedurally barred, having been dismissed in the state courts on the basis of La.C.Cr.P. art. 930.4.

### E. Violation of Constitutional Right to Miranda Warnings

Hymes argues that he was detained, held in custody, arrested and handcuffed without being advised of his constitutional rights in violation of Miranda v. Arizona, 384 U.S. 436 (1966). Hymes raised this same claim in his state post-conviction application.[16] The state district court determined that Hymes' claim was procedurally barred under La.C.Cr.P. art. 930.4 due to his failure to raise it "in an earlier proceeding and/or on appeal."[17]

As set forth above, the procedural bar enunciated in

---

[15] See State rec., vol. 2 of 6, tab 4.

[16] See State rec., vol. 2 of 6, tab 3, pp. 34–58.

[17] See State rec., vol. 2 of 6, tab 6.

La.C.Cr.P. art. 930.4 has been determined to constitute an independent and adequate state procedural bar for purposes of foreclosing federal habeas corpus review.[18] Further, Hymes has failed to make the required showing of "cause" and "prejudice" to excuse his failure to comply with state procedural requirements, nor has he made a showing that a "fundamental miscarriage of justice" will occur if the merits of the instant claim are not reviewed. [19] Accordingly, Hymes has failed to overcome the above-described procedural bar; therefore, the claim is procedurally barred and must be dismissed with prejudice for that reason. In an abundance of caution, the court shall, nevertheless, address the merits of Hymes' claim.

Deputy Louis Berard testified that he heard a robbery broadcast over his police radio and, shortly thereafter, saw a vehicle and driver which fit the broadcast descriptions. At that point, Berard beckoned the driver, Hymes, to pull over and detained him at a nearby Burger King restaurant until a robbery detective arrived on the scene. During this detention period, Berard did not question Hymes and, correspondingly,

---

[18]See discussion _supra_ at pp. 12-14.

[19]See discussion _supra_ at pp. 14-17.

did not read him his <u>Miranda</u> rights.[20]  Hymes, however, without prompting from Deputy Berard, spontaneously stated that he could not be charged with armed robbery because he did not have a gun.  Hymes argues that this statement should not have been used against him because it was provided before he was advised of his <u>Miranda</u> rights.

In <u>Miranda v. Arizona</u>, 384 U.S. 436, 478–479 (1966), the United States Supreme Court held that a person, prior to any custodial interrogation, must be warned "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."  If a person is not provided with the above warnings in connection with a custodial interrogation, any statement he provides cannot be used against him.  The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  <u>Miranda</u>, 384 U.S. at 444 (footnote omitted).

---

[20]<u>See</u> State rec., vol. 4 of 6, p. 396, Deputy Berard's trial testimony, lines 1–5; <u>see</u> <u>also</u> Federal rec., doc. 1, Hymes' supporting brief, p. 41.

While it is undisputed that Hymes, at the time he made his statement to the effect that he could not be charged with armed robbery because he did not possess a gun, was deprived of his "freedom of action", it is likewise undisputed that no "questioning initiated by law enforcement officers" had taken place. Accordingly, Hymes' right to be Mirandized had not yet been triggered and, as such, he suffered no constitutional violation by virtue of the fact that his spontaneous statement was admitted against him at trial.

## RECOMMENDATION

It is therefore RECOMMENDED that the petition of Alexander Hymes for habeas corpus relief be DENIED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto.

Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 14th day of ____July____, 2009.


ALMA L. CHASEZ
United States Magistrate Judge